BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
AMY E. POTTER
amy.potter@usdoj.gov
Assistant United States Attorney
405 E. 8th Street, Suite 2400
Eugene, Oregon  97401-2708
Telephone: (541) 465-6771
Attorneys for the United States

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 1:20-cv-00740-BR |
| Plaintiff, | |
| v. | **COMPLAINT,** *in rem,* **FOR FORFEITURE** |
| **$199,940.00 UNITED STATES CURRENCY,** *in rem*, | |
| Defendant. | |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Amy E. Potter, Assistant United States Attorney, for its complaint *in rem* for forfeiture, alleges:

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendant, *in rem*, $199,940.00 U.S. Currency, was seized in the District of Oregon, and is now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendants, *in rem*, $199,940.00 U.S. Currency represents proceeds traceable to an exchange for controlled substances or were used or intended to be used to facilitate such a transaction in violation of 21 U.S.C. § 841(a)(1), and is forfeitable to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(6), as more particularly set forth in the declaration of David Wentworth, Special Agent, Drug Enforcement Administration, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, plaintiff, United States of America, prays that due process issue to enforce the forfeiture of defendant, *in rem*, $199,940.00 U.S. Currency; that due notice be given to all interested persons to appear and show cause why forfeiture of these defendants, *in rem*, should not be decreed; that due proceedings be had thereon; that these defendants be forfeited to the United States; that the plaintiff United States of America be awarded its costs and disbursements incurred in this action.

DATED: May 5, 2020.                                              Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/ Amy E. Potter*
AMY E. POTTER
Assistant United States Attorney

## VERIFICATION

I, AGENT David Wentworth, declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with the Drug Enforcement Administration and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

<u>s/David Wentworth</u>
AGENT DAVID WENTWORTH
Special Agent
Drug Enforcement Administration

**DECLARATION of DAVID WENTWORTH**

I, David Wentworth, do hereby declare:

**BACKGROUND/EXPERIENCE**

1.     I am a Special Agent (SA) with the Drug Enforcement Administration (hereinafter "DEA"), United States Department of Justice. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I also am responsible for investigating drug related crimes within the United States. Under 21 U.S.C. § 878. I am empowered to make arrests, obtain and execute search warrants, and to make seizures of property pursuant to Subchapter I of Chapter 13 of Title 21 United States Code.

2.     I am currently assigned to the DEA Medford Resident Office. I have been employed with the DEA since July 2014. Prior to my employment with the DEA from 2009 to 2014, I was a federal criminal investigator of the Marine Corps Criminal Investigative Division (hereinafter "CID") at Camp Pendleton in California. Besides my training with the CID I completed the 17-week DEA Basic Agent Training program in Quantico, Virginia. The training focused on methods of unlawful drug trafficking; the identification of controlled substances; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activities; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets intended to be used to facilitate drug violations. My specialized training has included, but is not limited to, the investigation of the manufacture, possession, and distribution of controlled substances listed within the Controlled Substance Act; executing search and arrest warrants

involving drug offenses; gathering drug and non-drug evidence; participating in undercover assignments; supervising and utilizing informants; investigating clandestine laboratories, smuggling, and money laundering; and monitoring drug-related conversations via Court authorized electronic eavesdropping.

## PURPOSE OF THE AFFIDAVIT

3.  This declaration is submitted in support of a civil complaint *in rem* for forfeiture of $199,940 United States Currency seized from Rodolfo GARCIA and Nancy BECERRA-Silva on September 3, 2019, on Interstate 5 (I-5) near Mile Post 32 close to Central Point, Oregon.  As discussed below, I believe there is probable cause that the $199,940 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as moneys furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate violations of 21 U.S.C. § 841(a)(1). This affidavit does not include all of the facts known to me regarding this investigation, only those sufficient to establish probable cause to seize the above referenced Currency.

## SUMMARY OF THE INVESTIGATION

4.  On September 3, 2019, Central Point Police Department (CPPD) Officer Munoz was working patrol and using radar on I-5 at approximately Mile Post 30, which is marked as a 55 mile per hour speed zone. Officer Munoz is a narcotics canine handler in the Patrol Division of CPPD. His K9, Mattis, was with him in his patrol vehicle. At approximately 11:18 p.m., Officer Munoz saw a vehicle heading northbound going 78 miles per hour. He pulled behind the vehicle and initiated a traffic stop in the vicinity of Mile Post 32.  The vehicle was bearing California license plate number 8HZZ370.

5. During the stop, he identified the driver as Rodolfo GARCIA and the passenger as Nancy BECERRA-Silva. Officer Munoz explained the reason for the stop and asked Mr. GARCIA for his driver's license and vehicle insurance. Mr. GARCIA provided his driver's license and stated that the vehicle was a rental. Officer Munoz asked for the rental agreement and asked if he rented the vehicle. Mr. GARCIA stated that his friend rented the vehicle for him. At this point Officer Munoz requested a cover unit to his location. Officer Munoz reviewed the rental agreement and observed that it was a one-day rental and Mr. GARCIA was not an authorized driver. Officer Munoz explained that since he was not on the rental agreement he was not an insured driver and asked if he had private insurance. Mr. GARCIA stated that he did not. Mr. GARCIA stated that his friend rented the vehicle for him because he was not yet 25 years old.

6. CPPD Officer Evans arrived on scene and began to write Mr. GARCIA a citation for speeding and no insurance while Officer Munoz continued to talk to Mr. GARCIA. He asked Mr. GARCIA where he was coming from, and Mr. GARCIA stated he was coming from the Bay area. Officer Munoz asked where Mr. GARCIA was heading, and he replied "up here." Officer Munoz asked Mr. GARCIA if he was headed to Central Point, but Mr. GARCIA was unable to give a location of where he was headed. Officer Munoz asked Mr. GARCIA how long he intended to be in Oregon, and he replied "one day" then changed to "two days." Based on his training and experience, Officer Munoz believed Mr. GARCIA was engaged in criminal activity. He asked Mr. GARCIA if he had anything illegal in the vehicle, and Mr. GARCIA stated no. He asked if he had methamphetamine, cocaine, heroin, large amounts of cash, or large amounts of marijuana

inside the vehicle, and Mr. GARCIA stated no. He asked for consent to search the vehicle, and Mr. GARCIA denied consent.

7. After speaking with Mr. GARCIA, Officer Munoz deployed his K9, Mattis, to conduct an open-air sniff of the exterior of the vehicle. During the sniff, Mattis alerted to a narcotic odor at the rear passenger-side door. Officer Munoz then secured Mattis back in his patrol vehicle.

8. Officer Munoz then spoke with Ms. BECERRA-Silva. He asked her how long they were traveling and where they were going. She stated that they were only going for one day and they were visiting a relative of Mr. GARCIA, but she did not know where in Oregon. He asked if there was anything illegal in the vehicle, and she stated no. Officer Munoz asked Ms. BECERRA-Silva to exit the vehicle, and she informed him that she did not consent to searches and would not exit the vehicle. Officer Munoz explained that he was going to search the vehicle and asked her to step out of the vehicle approximately five times. She finally exited the vehicle after he informed her that he would place her under arrest for interfering if she did not obey his order.

9. While speaking with Ms. BECERRA-Silva, Officer Munoz could smell the odor of raw marijuana. After entering the vehicle, the odor of marijuana became strong. He located a silver container in the center console that contained approximately 18 grams of marijuana. While searching the back seat, he located a large gray duffle bag containing a large amount of cash that was packaged with rubber bands and nearly filled the duffle bag. After Officer Munoz located the cash, the officers advised Mr. GARCIA and Ms. BECERRA-Silva of their *Miranda* rights and placed them in a marked patrol vehicle.

10. After searching the vehicle, Officer Munoz contacted me, and I responded to the scene. I then followed Officer Munoz to CPPD and took possession of the cash located in the duffel bag. A cash count revealed the amount to be $199,940.

11. Officers also found a black Stack-On brand safe in the vehicle. Officer Munoz obtained a state seizure warrant for the safe. Upon executing the warrant, he discovered the safe contained a loaded .357 caliber revolver.

12. Officers also found three iPhones in the vehicle. On September 9, 2019, CPPD Officer Abbott obtained a state search warrant for the search of the three iPhones.

13. On October 31, 2019, I received reports of the digital findings for each iPhone. Based on a review of the reports, specifically the chat and SMS (texting) conversations extracted from one of the iPhones, I have determined that telephone number 925-817-XXXX appears to have been used by Rodolfo GARCIA entirely for the buying and selling of marijuana. Following is a summary of information extracted from this iPhone:

14. GARCIA was in contact with an unlabeled contact using telephone number 916-367-XXXX between August 27 and September 3, 2019. The contact sent GARCIA an address in Sacramento, California. The user of the phone wanted to "drop it off in the morning." Both parties discussed making money together. The contact wanted to know "are you flaking or giving your trim to someone else" so they could arrange to get it from someone else if necessary. GARCIA assured the contact that he is "good for it" and that GARCIA is in "Hubolt" grabbing more. There was further conversation about trim and when GARCIA is coming back.

15. GARCIA was also in contact with an unlabeled contact using telephone number 305-331-XXXX on August 26, 2019. The contact sent GARCIA what appears to be a drug ledger or a record of paid trimmer activity created in the Apple notes app, which lists the following:

A. Voz 4 lbs - 262 grams

B. Solorio 2 lbs - 389 grams

C. El chino 2 lbs - 191 grams

D. Rox 2 lbs

E. Elton 2 lbs - 73 grams

F. Catrin 2 lbs - 380 grams

G. Julio 3 lbs 195 grams

16. Based on my training and experience I believe this ledger a likely to be a record of trimmer activity for the purpose of managing payments to trimmers (those named in the ledger). Marijuana producers commonly pay trimmers by the amount of marijuana they process by trimming it into bud (the quantities listed in the ledger).

17. GARCIA was in contact with an unlabeled contact using telephone number 925-305-XXXX on August 28, 2019. GARCIA stated, "I need runtz. Got a plug?" Based on my training and experience, I know that runtz is a strain of marijuana.

18. GARCIA was in contact with an unlabeled contact using telephone number 925-864-XXXX between August 24 and August 29, 2019. GARCIA told the contact that this is his new number and that GARCIA needs runtz bad. The contact responded that "them bitches expensive" but that they can get it. The contact wanted to know if GARCIA wanted a whole bag. GARCIA stated he needs seven to complete his

order. The contact sent GARCIA a screenshot of another iMessages conversation apparently from their phone with a contact listed as "K00lJOHN," who said, "Depends which person hits me back it's some for 32 I think I can get em to 3 bands and there is some for 29 but might have seeds. 28 for the one with seeds but it look good n smell good." The contact responds in the same screenshot with "Ok I'll let em know." The contact then sent GARCIA a message that says "28" (believed to be referring to $2,800 per pound) accompanied by a photograph of apparent marijuana bud and another message that stated, "no seeds."

19. GARCIA was in contact with an unlabeled contact using telephone number 925-660-XXXX between August 21 and September 2, 2019. GARCIA told the contact that this is his new number and his old one will be off tomorrow. GARCIA and the contact talked about GARCIA buying runtz and other strains of marijuana. The contact stated that the distributors are in Oroville (a city in California). GARCIA and the contact exchanged various pictures and videos of marijuana. Their conversation revolved entirely around the buying/selling of marijuana. GARCIA sent the contact a screenshot of a conversation with 541-421-XXXX, where that contact told GARCIA what marijuana samples they wanted. I know that 541 is an Oregon area code.

20. GARCIA was in contact with an unlabeled contact using telephone number 707-499-XXXX between August 17 and September 3, 2019. GARCIA and the contact exchanged multiple photos of suspected marijuana, as well as photographs of body armor, multiple loaded AR-type rifles, and a pistol.

21. On September 3, 2019, the date of the stop, GARCIA was in contact with 541-891-XXXX, who identified themselves as "Nora" and asked "How much longer to

Grants Pass." "Nora" also sent a screen cap of the address for the Chevron gas station located at 409 Redwood Highway, Cave Junction, Oregon. During the approximate time frame of the traffic stop, "Nora" called the GARCIA phone number multiple times. When the phone wasn't answered "Nora" began messaging multiple times wanting the owner of the phone to answer, call back, and requesting to know what is happening and "how much longer do you have?"

22.    Rodolfo GARCIA and Nancy BECERRA-Silva submitted administrative claims for the money. On the forms, they claimed to have a personal property interest in the money, but provided no documentation or other information.

## CONCLUSION

23.    Based on the foregoing and my training and investigative experience, I have probable cause to believe that the $199,940 in U.S. currency seized from Rodolfo GARCIA and Nancy BECERRA-Silva on September 3, 2019, is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as moneys furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate violations of 21 U.S.C § 841(a)(1).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 5th day of May 2020.

*s/ David Wentworth*
David Wentworth
Special Agent, DEA

☙JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$199,940.00 in United States currency, in rem

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Jackson**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Amy E. Potter - United States Attorney's Office
405 E. 8th Street, Suite 2400, Eugene OR 97401-2708

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability |  | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury |  |  | ☐ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** |
| ☐ 195 Contract Product Liability |  |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise |  |  |  | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |  | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence |  | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** |  | **FEDERAL TAX SUITS** | ☐ 864 SSID Title XVI |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 865 RSI (405(g)) |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  | **IMMIGRATION** | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  | ☐ 462 Naturalization Application | ☐ 891 Agricultural Acts |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition |  | ☐ 463 Habeas Corpus - Alien Detainee | ☐ 892 Economic Stabilization Act |
|  |  |  |  | ☐ 465 Other Immigration Actions | ☐ 893 Environmental Matters |
|  |  |  |  |  | ☐ 894 Energy Allocation Act |
|  |  |  |  |  | ☐ 895 Freedom of Information Act |
|  |  |  |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
|  |  |  |  |  | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
21:881(a)(6) / 21:841

Brief description of cause:
forfeiture of proceeds used or intended to be used to facilitate narcotics trafficking

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____   DOCKET NUMBER _____

DATE: 5/5/2020

SIGNATURE OF ATTORNEY OF RECORD: s/ Amy E. Potter

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____